FILED
2014 Sep-29  PM 01:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **THOMAS ATHA, JR.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:12-CV-3549-MHH** |
| | } | |
| **CAROLYN W. COLVIN, Acting** | } | |
| **Commissioner, Social Security** | } | |
| **Administration,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Thomas Atha, Jr. filed this action on October 9, 2012, pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act.  Mr. Atha seeks judicial review of a final adverse decision of the Commissioner of the Social Security Administration.[1]  The Commissioner affirmed the Administrative Law Judge's denial of Mr. Atha's claims for a period of disability, disability insurance benefits, and supplemental security income benefits.  For the reasons stated below, the Court **AFFIRMS** the Commissioner's decision.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit.  *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer affecting the parties' substantial rights must be disregarded.").

## I.   STANDARD OF REVIEW

The scope of review in this matter is limited.  "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and his 'legal conclusions with close scrutiny.'"  *Riggs v. Soc. Sec. Admin., Comm'r*, 522 Fed. Appx. 509, 510–11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the findings of the Commissioner.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  In making this evaluation, the Court may not "reweigh the evidence or decide the facts anew," and the Court must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it."  *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 930 (11th Cir. 2013).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis,

then the Court must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Mr. Atha alleges that his disability began on October 13, 2008. (Doc. 8, p. 1).[2] Mr. Atha first applied for a period of disability, disability insurance benefits, and social security income benefits on January 12, 2009. (Doc. 4-3, p. 18; Doc. 4-8, p. 2). The Social Security Administration denied Mr. Atha's claims on March 24, 2009. (Doc. 4-3, p. 18). At Mr. Atha's request, an Administrative Law Judge (ALJ) held a video hearing on June 22, 2010, and held a subsequent supplemental video hearing on November 2, 2010. (Doc. 4-4, pp. 2–47, 85–130). At the time of his hearings, Mr. Atha was 35 years old. (Doc. 4-7, p. 2). Mr. Atha has completed his GED. (Doc. 4-8, p. 42–43). His past relevant work experience is as a vinyl siding installer, trailer assembler, and sheetrock hanger. (Doc. 4-4, p. 33; Doc. 4-7, p. 2; Doc. 4-8, pp. 25, 38).

On December 11, 2010, the ALJ denied Mr. Atha's request for disability benefits, concluding that Mr. Atha is not disabled under sections 216(i), 223(d), or 1614(a)(3)(A) of the Social Security Act. (Doc. 4-3, p. 35). In his 18-page

---

[2] Mr. Atha initially alleged onset of disability on April, 10, 2004 (Tr. 263, 266). At his second hearing, he amended his onset date to December 31, 2003. (Tr. 100). In his brief, Mr. Atha states that he "amends his onset date to 10/13/08, the date of a suicide attempt and admission to Gadsden Regional Medical Center followed by treatment at CED Mental Health Center." (Doc. 8, p. 1). Mr. Atha "understands that he is not insured on 10/13/08 and he will only be eligible for SSI." (*Id.*).

decision, the ALJ described the "five-step sequential evaluation process for determining whether an individual is disabled." (*Id.* pp. 19–21). In addition to the five-step process, the ALJ explained that if "the claimant is disabled and there is medical evidence of substance use disorders, the undersigned must determine if the substance use disorders are a contributing factor material to the determination of disability." (*Id.* p. 21). The ALJ must "evaluate the extent to which the claimant's mental and physical limitations would remain if the claimant stopped the substance use." (*Id.*). If the remaining limitations would not be disabling, the claimant's substance abuse is material and "the claimant is not disabled." (*Id.*).

The ALJ found that there is no evidence that Mr. Atha "has engaged in substantial gainful activity since December 31, 2003." (*Id.*). In addition, the ALJ determined that Mr. Atha has the following severe impairments:

> status post fracture of the left patella with open reduction internal fixation; status post fracture of the distal tibia and fibular shafts with open reduction internal fixation; mild degenerative disc disease of the lumbar spine; depressive disorder with agitated features; alcohol dependence with physiological dependence by history; polysubstance abuse and dependence by history; and low average to borderline intellectual functioning.

(*Id.*). The ALJ did not find Mr. Atha's history of pancreatitis to be a severe impairment because Mr. Atha's "history of pancreatitis does not significantly limit his ability to perform basic work activities," and because Mr. Atha testified that pancreatitis was no longer problematic. (*Id.* at 26). The ALJ also determined that

Mr. Atha's previous shotgun wounds did not constitute a severe impairment because he did not have "any significant residuals from that incident." (*Id.*). Finally, The ALJ found that while Mr. Atha was diagnosed with hepatitis, there was no evidence that Mr. Atha had any symptoms, and thus it was not a severe impairment. (*Id.*).

The ALJ concluded that Mr. Atha's mental impairments, including his substance use disorders, met or equaled the criteria of a listed impairment from December 31, 2003 through July 6, 2010. (*Id.* at 26). Specifically, the ALJ found that, considering Mr. Atha's substance use, Mr. Atha had (1) a marked restriction in the activities of daily life; (2) marked difficulties in social functioning; (3) marked difficulties in concentration, persistence or pace; and (4) repeated episodes of decompensation. (*Id.* at 27). The ALJ also concluded that Mr. Atha did not have an impairment or combination of impairments that met the criteria of a listed impairment after July 6, 2010. (*Id.* at 26).

In making this determination, the ALJ considered the testimony of Dr. Warren, the medical expert who testified at the November 2010 hearing. (*Id.* at 27). Dr. Warren testified that Mr. Atha's mental impairments met the criteria of 12.04 and 12.09 when he was drinking, but that Mr. Atha's impairments did not meet the criteria of either listing when he was not drinking. (*Id.*). The ALJ gave significant weight to the testimony of Dr. Warren because it was consistent with

Mr. Atha's medical records and the other testimony given at the hearings.  The ALJ gave some weight to the opinions of the State agency's nonexamining psychiatrist and psychologist, but noted that they did not have access to all of the evidence and testimony available at the hearing.  The ALJ found it significant that the State agency psychologist determined that Mr. Atha's "mental impairments met the criteria of section 12.09 in the presence of substance use, and that the claimant's depression in the absence of substance use caused no more than moderate mental limitations."  (*Id.*).

The ALJ determined that if Mr. Atha had stopped substance use from December 31, 2003 through July 6, 2010, Mr. Atha would still have severe impairments, but such impairments would not meet or equal a listing.  (*Id.* at 28).  The ALJ also determined that Mr. Atha's impairments after July 6, 2010 would not meet or equal a listing.  (*Id.*).  Looking to the testimony of Dr. Wilson, who performed psychological evaluations of Mr. Atha in June and November of 2010,[3] the ALJ found that without substance use, Mr. Atha would have (1) mild limitations in activities of daily living; (2) moderate limitations in social functioning; (3) moderate limitations in concentration, persistence and pace; and (4) no episodes of decompensation.  (*Id.* at 29).  In addition, the ALJ found that if

---

[3] Dr. Wilson is a Licensed Psychologist at Gadsden Psychological Servides.  (Doc. 4-13, p. 50).  Mr. Atha's attorney in this disability action referred Mr. Atha to Dr. Wilson for evaluation.  (*Id.*).

Mr. Atha stopped his substance abuse, his impairments would not meet the "paragraph C" criteria. (*Id.*).

Next, the ALJ calculated Mr. Atha's residual functional capacity. The ALJ determined that without Mr. Atha's substance use through July 6, 2010 and for the time period thereafter, Mr. Atha would have the RFC to perform sedentary work that required sitting at least six hours and standing or walking two hours out of every eight hour workday; avoiding concentrated exposure to extremes of heat, cold, humidity, and vibration; and only occasional bilateral pushing and pulling with pedal operation with bilateral lower extremities. (*Id.* at 30). The ALJ also found that Mr. Atha could "understand, remember, and carry out instructions sufficient to complete very simple, routine repetitive tasks"; that he needed a low stress work environment, defined as no production rate or goal oriented work; and that he needed to work with things rather than people. (*Id.*).

In determining Mr. Atha's RFC, the ALJ considered the report of Dr. Stewart. Dr. Stewart performed surgery on Mr. Atha's patella after a 2003 motor vehicle accident. In February of 2004, Dr. Stewart reported that Mr. Atha's kneecap x-rays looked fine, that Mr. Atha had gone back to work, and that Mr. Atha reported no problems other than some aches and pains with changes in the weather. (*Id.*). The ALJ also noted that Mr. Atha did not seek treatment again until January 2006, when he began treatment with Dr. Connor. (*Id.* at 30–31). The

ALJ stated that while Mr. Atha was inconsistent in statements to Dr. Connor regarding his pain level, "Dr. Connor never reported that [Mr. Atha] had disabling pain or limitations." (*Id.* at 31). Additionally, Mr. Atha testified that he did not seek treatment for pain because he did not have money to do so, but Mr. Atha's mother testified that she paid for his treatment with Dr. Connor. (*Id.*). Finally, the ALJ gave significant weight to the fact that Mr. Atha did not seek treatment for his pain after Dr. Connor dismissed him in June of 2008, but only took over-the-counter medication. (*Id.*).

Based on this information, and on Mr. Atha's multiple fractures stemming from motor vehicle accidents, the ALJ determined that the most appropriate type of work for Mr. Atha would be a range of sedentary work. (*Id.*). The ALJ assigned little weight to the nonexamining State agency physician who claimed that Mr. Atha could perform a range of light work because the physician did not have access to all of the evidence and testimony. (*Id.*).

The ALJ also considered Mr. Atha's history of depression in determining Mr. Atha's RFC. The ALJ noted that Mr. Atha denied being depressed in 2008 to a counselor and to his psychiatrist, Dr. Tulao. (*Id.*). The ALJ gave little weight to Dr. Wilson's reports. (*Id.* at 31–32). The ALJ pointed out that in 2009, at the time that Dr. Wilson diagnosed Mr. Atha with depression, Mr. Atha was using drugs and alcohol. (*Id.* at 31). Additionally, the ALJ gave little weight to Dr. Wilson's

report that Mr. Atha had a GAF of 48 in June 2010, and that Mr. Atha's GAF was still 48 in November 2010 when Mr. Atha reportedly had been sober for four months. (*Id.* at 32). The ALJ stated: "It is not credible that [Mr. Atha] would have the same level of mental impairment if he were no longer using drugs and alcohol." (*Id.*). The ALJ also noted that Dr. Wilson took Mr. Atha's physical limitations into consideration, which Dr. Wilson was not qualified to do. (*Id.*).

The ALJ gave significant weight to the April 2010 report by the C.E.D. Mental Health Center that Mr. Atha "had been clean and sober for 10 months, and that his global assessment of functioning was 55," which indicated only moderate difficulties in social functioning. (*Id.* at 31). The ALJ also gave significant weight to the testimony of Dr. Warren because his opinion was consistent with Mr. Atha's mental health records, particularly the April 2010 GAF score of 55. (*Id.* at 32). Some weight was given to the opinions of the nonexamining State agency psychiatrist and psychologist, but the ALJ again noted that they did not have access to all of the evidence. (*Id.*). The ALJ also reiterated that the State agency psychologist determined that in the absence of substance use, Mr. Atha's depression caused no more than moderate mental limitations. (*Id.*).

In determining Mr. Atha's RFC, the ALJ also emphasized that Mr. Atha continued to engage in work activity at greater than a sedentary level. (*Id.*). Dr. Stewart reported in February of 2004 that Mr. Atha had returned to work hanging

vinyl siding.  (*Id.*).  In November of 2009, Mr. Atha's hospital records indicated that he was employed by Brian Fitz Vinyl Siding.  (*Id.*).  In November 2008, the C.E.D. Mental Health Center reported that Mr. Atha was employed hanging soffit. (*Id.*).  In April 2010, Mr. Atha reported to C.E.D. that he did odd jobs and worked part-time.  (*Id.*).  In June of 2010, Mr. Atha testified that he had done side jobs such as painting, hauling, scrap work, and yard work.  (*Id.*).  Additionally, the ALJ noted that Mr. Atha's daily activities, including part-time work, watching television, and doing household chores, were not consistent with disabling pain or limitations.  (*Id.*).  The ALJ ultimately determined that absent substance abuse, Mr. Atha's impairments could produce Mr. Atha's alleged symptoms, but that Mr. Atha's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible."  (*Id.*).

The ALJ concluded that from December 31, 2003 until July 6, 2010, even though Mr. Atha was unable to perform past relevant work, there were a significant number of jobs in the national economy that Mr. Atha could have performed if he had stopped his substance use.  (*Id.* at 33).  According to the ALJ, the same was true of the period following July 6, 2010.  (*Id.* at 34).  The ALJ based this determination on the opinion of the vocational expert, Mr. Parsons, who testified that Mr. Atha was capable of performing the requirements of representative occupations such as:

> surveillance system monitor of which 100 such jobs exist in Alabama
> and 7,600 such jobs exist in the United States; inspector/sorter, of
> which 240 such jobs exist in Alabama and 13,000 such jobs exist in
> the United States; and machine tender, of which 100 such jobs exist in
> Alabama and 3,200 such jobs exist in the United States.

(*Id.*).  Mr. Parsons also testified that these jobs were sedentary unskilled jobs and

that a mild to moderate level of pain would not preclude performance of such jobs.

(*Id.*).

Ultimately, the ALJ concluded that "[Mr. Atha]'s substance use disorder

was a contributing factor material to the determination of disability" because Mr.

Atha would not have been disabled from December 31, 2003 through July 6, 2010

if he stopped his substance use.  (*Id.* at 34–35).  Thus, the ALJ determined that

"there are jobs that exist in significant numbers in the national economy that Mr.

Atha can perform" and that Mr. Atha "was not disabled within the meaning of the

Social Security Act for the period December 31, 2003 through July 6, 2010" or for

the period following July 6, 2010.  (*Id.* at 35).

This became the final decision of the Commissioner on August 13, 2012,

when the Appeals Council refused to review the ALJ's decision.  (Doc. 4-3, pp. 2–

4).  Having exhausted all administrative remedies, Mr. Atha filed this action for

judicial review pursuant to § 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Doc. 1, p. 1).

## III.   ANALYSIS

To be eligible for disability insurance benefits, a claimant must be disabled. *Gaskin*, 533 Fed. Appx. at 930.  "A claimant is disabled if he is unable to engage in substantial gainful activity by reason of a medically-determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months."  *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

A claimant must prove that he is disabled.  *Id.* (citing *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003)).   To determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential analysis. *Gaskin*, 533 Fed. Appx. at 930.

> This process includes a determination of whether the claimant (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in the light of his residual functional capacity; and (5) can make an adjustment to other work, in the light of his residual functional capacity, age, education, and work experience.

*Id.* (citation omitted).   "The claimant's residual functional capacity is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments."  *Id.* (citing *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1545(a)(1)).

The Contract with America Advancement Act of 1996, 42 U.S.C. § 423(d)(2)(C), provides that an individual shall not be considered disabled if

alcoholism or drug addiction is a contributing factor material to the disability determination. In cases where a claimant is found disabled and there is medical evidence of addiction or alcoholism, the Commissioner must determine whether drug addiction or alcoholism is a contributing factor material to the determination of a disability. *Lott v. Colvin*, 2014 WL 722040, at *3 (11th Cir. Feb. 26, 2014); s*ee* 20 C.F.R. § 404.1535(a). The "key factor" in making this determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 CFR § 404.1535(b)(1). The claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. *Lott*, 2014 WL 722040, at *3 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

Mr. Atha argues that he is entitled to relief from the ALJ's decision because: (1) the ALJ's decision is not based on substantial evidence; (2) the ALJ failed to establish that Mr. Atha could perform other work; (3) the appeals council inadequately reviewed new evidence and should have remanded the claim; and (4) the ALJ failed to consider Mr. Atha's combination of impairments in determining disability. These contentions are without merit.

### A.    Substantial Evidence Supports the ALJ's Findings Related to the Materiality of Mr. Atha's Substance Abuse.

Mr. Atha contends that the ALJ's decision is not based on substantial evidence because the record contains substantial evidence of severe pain and

depression.  (Doc. 8, p. 25).  Additionally, Mr. Atha points out that Dr. Wilson assigned him a GAF of 48 both when Mr. Atha was drinking on June 29, 2010 and when Mr. Atha was sober in November 2010.  (*Id.* at 31–32).

In determining Mr. Atha's RFC, the ALJ reviewed all of Mr. Atha's medical records.  (Doc. 4-3, pp. 21–26).  The ALJ relied on Mr. Atha's testimony in the November 2010 hearing that his pancreatitis and hepatitis resolved after he stopped taking drugs and alcohol.  (Doc. 4-3, p. 25; Doc. 4-4, pp. 16–17).  Mr. Atha also testified that he took only over-the-counter medications for his pain and did not seek treatment for pain management after his former pain management doctor dismissed him in October 2010.  (Doc. 4-3, pp. 26, 29; Doc. 4-4, p. 16).  *See Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (holding that the ALJ properly considered claimant's lack of regular use of potent pain medication in making the finding about pain).  The ALJ was persuaded by the fact that no treating or examining source assessed Mr. Atha with disabling pain or limitations. (Doc. 4-3, p. 31).  *See Moncrief v. Astrue*, 300 Fed. Appx. 879, 881 (11th Cir. 2008) (holding that the ALJ properly considered the lack of evidence that claimant was receiving treatment or medication for various impairments).  Therefore, the ALJ's finding regarding Mr. Atha's pain is supported by substantial evidence.

The ALJ also properly considered the evidence regarding Mr. Atha's depression.  The ALJ noted that when Mr. Atha was admitted to the hospital in

October 2008 after a reported attempted suicide, Mr. Atha was intoxicated, and his drug screen was positive for benzodiazepine, cocaine, THC, and methamphetamine. (Doc. 4-3, pp. 22–23; Doc. 4-10, pp. 116–117). Additionally, in a November 7, 2008 evaluation at C.E.D. Mental Health Center, Mr. Atha reported having been drunk when assessed with major depression. (Doc. 4-3, p. 23; Doc. 4-12, pp. 85–86). Mr. Atha also denied depression in treatment on November 12, 2008. (Doc. 4-3, p. 23; Doc. 4-12, p. 89). When Mr. Atha attempted suicide on March 6, 2009, Gadsden Regional Medical Center reported that he had been drinking and that his drug screen was positive for opiates and benzodiazepine. (Doc. 4-3, p. 23; Doc. 4-14, pp. 8, 13).

The only evidence of disability that Mr. Atha points to after he became sober is the fact that Dr. Wilson assigned a GAF of 48 both on June 29, 2010 when Mr. Atha had been drinking and on November 9, 2010 when Mr. Atha was sober. The ALJ gave little weight to Dr. Wilson's opinion and found that "[i]t is not credible that [Mr. Atha] would have the same level of impairment if he were no longer using drugs or alcohol." (Doc. 4-3, p. 32). Additionally, Dr. Wilson's November 9, 2010 record does not contain evidence of a formal psychological examination. (Doc. 4-14, pp. 95–96). The ALJ gave more weight to the C.E.D.'s report that in April 2010, after Mr. Atha was sober for 10 months, his GAF was 55. (Doc. 4-3, p. 32; Doc. 14-3, pp. 35–39). The ALJ also gave more weight to the opinion of Dr.

Warren, the medical expert who testified at the November 2010 hearing.  (Doc. 4-3, p. 32).  The ALJ stated that Dr. Warren's opinion was consistent with the April 2010 mental health records revealing moderate symptoms during periods of sobriety.  (*Id.*); *see Forrester v. Comm'r of Soc. Sec.*, 455 Fed. Appx. 899, 902–03 (11th Cir. 2012) (finding no error in crediting the opinion of a non-treating source over that of a treating source where there was good cause to discount the treating source, and the record supported the contrary conclusion).

Mr. Atha also contends that the ALJ should have awarded him benefits under listing 12.04.[4]  (Doc. 10, pp. 4–5).  In fact, the ALJ determined that Mr. Atha met listing 12.04 while he was abusing drugs and alcohol.  (Doc. 4-3, pp. 16–28). The ALJ denied benefits because he found that Mr. Atha's alcohol and substance abuse was a contributing factor material to the determination of disability.  (*Id.* at 34–35).  Thus, what Mr. Atha is really challenging is whether substantial evidence supports the ALJ's determination that Mr. Atha's substance use was a contributing factor material to the determination of disability.  As discussed above, there was substantial evidence to support the ALJ's determination that when Mr. Atha was sober, his impairments did not meet the listed criteria.  Therefore, the Court affirms the ALJ's determination as to the materiality of Mr. Atha's substance use.

---

[4] In Mr. Atha's initial memorandum in support of disability, he claimed that he should be awarded benefits under listing 112.04.  (Doc. 8, pp. 18–25).  In Mr. Atha's reply, he notes that the reference was a clerical error and that he meant to refer to listing 12.04.  (Doc. 10, p. 4 n.2).

**B.    The VE Testimony Established Other Work That Exists in Significant Numbers.**

In the fifth step of the sequential evaluation process, "the burden shifts to the Commissioner to show that the claimant can perform other jobs that are significant in number in the national economy, considering age, education, and work experience." *Brooks v. Barnhart*, 133 Fed. Appx. 669, 670 (11th Cir. 2005) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).   The ALJ can satisfy this burden by providing "evidence about the existence of other work in the national economy that a claimant can perform." *Id.* (citing *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984)).   The ALJ may provide this evidence through a VE's testimony. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). The ALJ's finding "must be supported by substantial evidence." *Davis-Grimplin v. Comm'r, Soc. Sec. Admin.*, 556 Fed. Appx. 858, 862 (11th Cir. 2014) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).   "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Phillips*, 357 F.3d at 1240 n. 7).

Mr. Atha contends that the ALJ did not establish that other work that Mr. Atha could perform exists in significant numbers.  (Doc. 8, p. 32).  In considering whether work exists in significant numbers, "[t]he appropriate focus under the regulation . . . is the national economy." *Allen v. Bowen*, 816 F.2d 600, 603 (11th

Cir. 1987) (upholding the decision of the ALJ and finding that even if the claimant provided credible evidence of the lack of jobs in his geographic area, "failure to disprove the existence of such jobs on a national scale would leave the ALJ's finding intact"). "Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country." *Brooks v. Barnhart*, 133 Fed. Appx. 669, 670 (11th Cir. 2005) (citing 20 C.F.R. § 404.1566(a)).

In *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1283 (S.D. Ala. 2000), the district court upheld the ALJ's decision and determined that 650 jobs in the state of Alabama and 65,000 jobs in the national economy represented a significant number of jobs in the national economy. Other jurisdictions have upheld decisions in which an ALJ found even fewer jobs were available to the claimant. *See Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (finding 200 jobs in the state of Iowa and 10,000 in the national economy to be significant); *Rodriguez v. Astrue*, 2013 WL 3753411, at *2–3 (S.D.N.Y. July 17, 2013) (finding that the ALJ did not err in determining that fewer than 1,000 jobs in a region and 12,000 jobs nationwide was a significant number).

The ALJ in this case asked the VE whether jobs exist in the national economy for an individual with Mr. Atha's age, education, work experience, and RFC without substance use. (Doc. 4-3, p. 34). The VE testified that given all of

these factors, an individual would be capable of performing the following jobs: a surveillance system monitor (100 jobs in Alabama and 7,600 in the United States); an inspector/sorter (240 jobs in Alabama and 13,000 jobs in the United States); and a machine tender (100 jobs in Alabama and 3,200 jobs in the United States). (*Id.*). Thus, the ALJ determined based on the VE's testimony that there were 440 jobs statewide and 23,800 jobs nationwide that Mr. Atha could perform. These numbers are lower than the work options in *Daniels*.[5] Nevertheless, this Court is bound by the substantial evidence standard and must "defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it." *Gaskin*, 533 Fed. Appx. at 930. This is a deferential standard. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Daniels*, 92 F. Supp. 2d at 1283 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A reasonable mind could accept that 440 jobs statewide and 23,800 jobs nationwide constitute a significant number of jobs in the national economy. Therefore, this Court must uphold the ALJ's determination.

Mr. Atha argues that the ALJ's finding is insufficient because the ALJ must consider the area in which the claimant resides. (Doc. 8, p. 33). Binding precedent

---

[5] The Eleventh Circuit Court of Appeals has not identified a number of jobs that the Commissioner must identify to meet the Commissioner's burden of proof. Based on this Court's research, the number of jobs available to the claimant in this case is lower than any number of jobs that the Eleventh Circuit Court of Appeals has upheld to date.

states that the proper focus is the national economy, not the area in which the claimant resides. *Allen*, 816 F.2d at 603. Additionally, under the regulations, "it does not matter whether—(1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work." 20 C.F.R. § 404.1566(a). Mr. Atha also points to the Ninth Circuit's decision in *Beltran v. Astrue*, 700 F.3d 386, 391 (9th Cir. 2012), where the court reversed the ALJ's finding that 135 jobs regionally and 1,680 jobs nationally was significant. *Beltran* is not binding on this Court, and it is factually distinguishable. In *Beltran*, the VE testified that she was not familiar with the area in which the claimant resided and was not aware of any available positions in that area. *Id.* at 390. The VE's testimony also indicated that the proposed job was "simply not available" to the claimant. *Id.* Additionally, the number of jobs available nationally in *Beltran* was significantly smaller than the number of jobs available nationally in this case. Therefore, the Court upholds the ALJ's determination that there were a significant number of jobs in the national economy that Mr. Atha could perform.

### C. The Appeals Council Adequately Considered Evidence Submitted After the ALJ's Decision.

If a claimant submits new, noncumulative, and material evidence to the Appeals Council (AC) after the ALJ's decision, then the AC shall consider such evidence. *Smith v. Soc. Sec. Admin.*, 272 Fed. Appx. 789, 800 (11th Cir. 2008)

(citing 20 C.F.R. § 404.970(b)).   Evidence is material if "'it is relevant and probative so that there is a reasonable possibility that it would change the administrative result.'"   *Watkins v. Astrue*, 925 F. Supp. 2d 1257, 1263 (N.D. Ala. 2013) (quoting *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987)).   Mr. Atha asserts that the AC failed to adequately review new evidence submitted to it after the ALJ's decision.  (Doc. 8, p. 35).

The evidence that Mr. Atha submitted to the AC appears in exhibits 22F through 25F.  (*See* Doc. 14-5).  Mr. Atha argues that these exhibits "show severe depression and mental health treatment following the suicide attempt on 10/13/08" and "a severe contusion of left should [sic] and right ankle on 1/5/09 with pain at 10/10 on the pain scale."  (Doc. 8, p. 35).  The record already contained evidence related to Mr. Atha's shoulder and ankle injury, and the ALJ considered that evidence in making his disability determination.  (Doc. 14-3, p. 23; Doc. 14-11, pp. 6–14).  The October 17, 2008 records relating to Mr. Atha's attempted suicide and subsequent treatment also were in the record already.  (Doc. 4-12, pp. 86–88).  The remainder of the mental-health treatment evidence submitted to the AC showed that Mr. Atha completed treatment at the C.E.D. and had a GAF score between 55 and 60, which supports the ALJ's conclusion that Mr. Atha's mental health issues are not disabling when he is sober.  (*See* Doc. 4-15, pp. 75–78).  Because the evidence submitted to the AC was either cumulative or was not likely to change

the outcome of the ALJ's decision, the AC did not err in denying review based on the evidence submitted.

Mr. Atha also claims that the AC erred in not articulating its reasons for declining to review the ALJ's decision.  (Doc. 8, p. 38).  The regulations do not require the AC to articulate its reasons for denying review.  (*See* 20 C.F.R. §§ 416.1470, 416.1481).  "[B]ecause a reviewing court must evaluate the claimant's evidence anew, the AC is not required to provide a thorough explanation when denying review. *Burgin v. Comm. of Soc. Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011); *see also Flowers v. Astrue*, 2012 WL 222970, at *6 (S.D. Ala. Jan. 6, 2012) (upholding that the AC's decision not to review the ALJ's decision in light of additional evidence where the AC "provided no explanation for its decision beyond its conclusion that these additional records provided no reason to review the ALJ's decision").  In this case, the AC stated that it "found no reason under our rules to review the Administrative Law Judge's decision."  (Doc. 4-3, p. 2).  The AC specifically stated that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council." (*Id.*).  Therefore, the AC's denial of benefits was sufficient under Eleventh Circuit law, and the AC did not err in not articulating its reasons for declining to review the ALJ's decision.

**D.     The ALJ Considered Mr. Atha's Impairments in Combination.**

Mr. Atha argues that the ALJ did not consider the combined effects of his impairments.   (Doc. 8, p. 41).   He adds that the ALJ failed to state that he considered the combination of impairments in determining whether Mr. Atha was disabled.  (*Id.*).  These arguments are without merit.

The ALJ found that Mr. Atha did not have "an impairment *or combination of impairments*" that met or equaled a listing.  (Doc. 4-3, pp. 26, 28) (emphasis added).  The ALJ also stated that he considered all of Mr. Atha's symptoms when determining Mr. Atha's RFC.  (*Id.* at 30).  This is sufficient under Eleventh Circuit law to show that the ALJ considered the combined effects of Mr. Atha's impairments.  *See Hutchinson v. Astrue*, 408 Fed. Appx. 324, 327 (11th Cir. 2011) (holding that the ALJ's statement that the claimant did not have an "impairment, individually or in combination" that met one of the listed impairments was sufficient to show that the ALJ considered the combined effects of claimant's impairments).

Mr. Atha's citations to *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986) and *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987) are inapposite.  In both *Gibson* and *Walker*, the ALJ failed to address several of the claimant's impairments at all. *See Gibson*, 779 F.2d at 623; *Walker*, 826 F.2d at 1001.  The ALJ in this case

23

evaluated all of the impairments that Mr. Atha alleged.[6]   Therefore, The ALJ properly considered Mr. Atha's alleged impairments both individually and in combination.

## IV.   CONCLUSION

Consistent with the foregoing, the Court concludes the ALJ's decision was based on substantial evidence and consistent with applicable legal standards. Accordingly, the decision of the Commissioner is **AFFIRMED**.

**DONE** and **ORDERED** this September 29, 2014.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[6] Mr. Atha also argues that the ALJ failed to consider neck strain, degenerative changes of the neck, uncontrolled and accelleraged hypertension, a 2009 assault with lacerations and contusions, cardiomealgy, venous congestion, pulmonary congestion, and enlarged heart.  (Doc. 8, p. 41).  Mr. Atha does not provide any citation in the record to support these impairments, nor did Mr. Atha discuss any of these impairments during testimony at his hearings.  *See* Doc. 4-4. Therefore, the ALJ did not fail to consider Mr. Atha's impairments both individually and in combination.